UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------
JOAN SCHWARZ,

                      Plaintiff,

        -against-

FEDEX KINKO'S OFFICE and PRINT
SERVICES, INC., and MILLIKEN & COMPANY,

                    Defendants.
------------------------------------------X

: 
:
:
:  08 Civ. 6486(THK)
:
:  **MEMORANDUM**
:  **OPINION AND ORDER**
:
:

**THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

Plaintiff Joan Schwarz ("Schwarz" or "Plaintiff") commenced this action in the Supreme Court of the State of New York, seeking compensation for damages suffered from a trip and fall accident. The accident occurred at a retail store operated by FedEx Office and Print Services, Inc., formerly FedEx Kinko's Office and Print Services, Inc.("FedEx Kinko's"). The Complaint contends that Fedex Kinko's is responsible for Plaintiff's catching her heel in the floor mat situated in the store vestibule, because it owned and used an inherently defective floor mat. (See Verified Complaint, dated June 5, 2008 ("Compl."), ¶¶ 11-17.)

After the action was removed to this Court on diversity grounds, under 28 U.S.C. § 1446(a), FedEx Kinko's filed a third-party complaint against Milliken & Company ("Milliken"), the supplier of the mat in question. (See FedEx Kinko's Third-Party Complaint, dated Oct. 17, 2008 ("Third-Party Compl.").) Plaintiff

-1-

then amended her Complaint to include Milliken as a direct Defendant, asserting product liability, negligence, and breach of warranty claims. (See Amended Verified Complaint, dated Nov. 26, 2008 ("Amended Compl."), ¶¶ 28, 32-33.) Milliken denies all liability to Plaintiff and asserts cross-claims against FedEx Kinko's for indemnification and contribution. (See Verified Answer to Plaintiff's Amended Complaint with Cross-Claim, dated Jan. 7, 2009 ("Milliken Answer"), ¶ 21.)

FedEx Kinko's now moves for summary judgment against Plaintiff and Milliken.  In opposition, Plaintiff cross-moves for partial summary judgment and seeks sanctions against FedEx Kinko's for spoliation of evidence.  Milliken joins Plaintiff's spoliation motion. (See Affirmation in Opposition to FedEx Kinko's Motion for Summary Judgment and in Partial Support of Plaintiff's Cross-Motion, dated Aug. 7, 2009 ("Milliken Affirmation").)  For the reasons that follow, FedEx Kinko's motion is granted and Plaintiff's cross-motion is denied.

**BACKGROUND**

I.   Plaintiff's Trip and Fall Accident[1]

Plaintiff is an elderly, yet active, retiree, who resides on the Upper West Side of Manhattan.  She enjoys pursuits such as playing the piano and tennis. (See Schwarz Deposition, dated Jan.

---

[1]     Except where noted, the following facts are essentially undisputed.

12, 2009 ("Schwarz Dep."), at 8-10, attached as Exhibit ("Ex.") A to FedEx Kinko's Motion for Summary Judgment ("FedEx Kinko's Motion").)   Defendant FedEx Kinko's is a Texas corporation that operates retail stores across the country that provide printing and copying services. (See FedEx Kinko's Notice of Removal, dated July 21, 2008, ¶ 3.)   One such store is located at 221 West 72nd Street in Manhattan.   (See FedEx Kinko's Local Rule 56.1 Statement of Material  Facts, dated July 9, 2009, ("FedEx Kinko's 56.1 St.") ¶ 1.)

On September 6, 2007, at about 6.30 p.m., Ms. Schwarz and a friend, Mr. Daven Jenkins, were on their way to a restaurant. (Schwarz Dep. at 22.)   Ms. Schwarz wore well-fitting "low heeled moccasin type shoes." (See id. at 21:4, 21:9.)   On the way to the restaurant, Ms. Schwarz stopped by the West 72nd Street FedEx Kinko's store to make a copy of a document. (See id. at 11:20.) The entranceway to the store consists of outer and inner sets of plate glass doors. (See id. at 23-24.)   Between the doors is a vestibule area that is approximately 6 feet by 10 feet in size. (See id. at 36.) Ms. Schwarz passed through the outer glass door, stepping into the vestibule with her left foot first.   She then stepped with her right foot.   As she moved her left foot forward once more, her right foot became stuck in the floor mat of the vestibule.   (See id. at 27, 28)   The mat was set approximately 20 inches from the outer  door.  (See id. at 27:7.)    This entanglement caused Ms.

Schwarz to fall forward, hitting her head and injuring her right wrist. (See id. at 27-29.)

Several people witnessed Ms. Schwarz's accident, including Mr. Jenkins. (See id. at 32.) Ms. Schwarz lay on the ground, stunned, for several minutes. (See id. 31-32.)  When she regained her senses, she noticed that her right hand was swollen. (See id. at 32-33.) Mr. Jenkins helped her to her feet, and "got her shoe out from the mat." (See id. 32:12.)  Realizing that she was injured, Ms. Schwarz decided not to wait for an ambulance.   Instead, accompanied by Mr. Jenkins, she proceeded by taxi cab to the emergency room at Roosevelt Hospital.  (See id. at 32.) At the hospital, a doctor examined her and found that her right radial wrist was broken.  He then set the wrist and placed it in a cast. (See id. at 46.)

A few days later, upon the recommendation of the hospital staff, Ms. Schwarz consulted with a hand surgeon — Dr. Glickel. (See id. at 49.) On September 14, Dr. Glickel performed surgery on Ms. Schwarz's wrist.  (See id. at 51.)  Following the operation, Ms. Schwarz underwent an extensive program of rehabilitation and physiotherapy for the wrist. (See id. at 51-54.)  As a result of the injury, Ms. Schwarz's right wrist is permanently scarred.  She suffers chronic weakness and occasional tremors in her right wrist and forearm, and cannot grip things tightly.  (See id. at 42, 44, 57.)  Among other things, the injury has had a negative impact on

her ability to perform routine activities, as well as her hobbies of playing tennis and the piano.  (See id. at 42,44.)

## II.   The Condition of the Mat

The mat installed in the vestibule was made of rubber and had small circular openings, each of which contained eight rubber projectiles/prongs. (See Pl.'s Expert Report of William Marletta, dated Aug. 22, 2008 ("Marletta Report"), attached as Ex. H to FedEx Kinko's Motion, at 2.)  Milliken and a non-party, Plastics Engineering of Lawrenceville, Georgia, had jointly designed the mat. (See FedEx Kinko's Rule 56.1 St. ¶ 5.) It was intended for commercial use in high-traffic areas with up to 1000 foot-traffics per day. (See Deposition of Clarence Porch, Market Manager of Milliken, dated May 4, 2008 ("Porch Dep."), attached as Ex. D to FedEx Kinko's Motion, at 57-58.)  FedEx Kinko's ordered the mat from Milliken and installed it according to Milliken's specifications, approximately eleven months prior to Ms. Schwarz's accident. (Affidavit of James Arca, Managing Director of Facilities for Fedex Kinko's, dated July 7, 2008 ("Arca Aff."), attached as Ex. C to FedEx Kinko's Motion, ¶¶ 3-4.)  Milliken's product guarantee policy covers the mat for five years.  (Porch Dep. at 60.)  According to Milliken, eleven months of ordinary wear and tear is insufficient to render the mat unusable.  (Porch Dep. at 69-70.)

On the day of the accident, Lisa Lawrence was the Senior

-5-

Center Manager at the FedEx Kinko's store.  Immediately after Ms. Schwarz's accident, Ms. Lawrence examined the condition of the mat. She did not observe any obvious wear and tear or dirt or debris stuck in the mat's circular openings.  (See Affidavit of Lisa Lawrence, dated July 6, 2008 ("Lawrence Aff."), attached as Ex. F to FedEx Kinko's Motion, ¶ 3; Deposition of Lisa Lawrence, dated Mar. 26, 2009 ("Lawrence Dep."), attached as Ex. B to FedEx Kinko's Motion, at 42.)  Plaintiff's photographs of the mat also reveal no visible signs of significant wear and tear.  (Porch Dep. at 73-74.) Neither Fedex Kinko's nor Milliken had ever received complaints about women's shoes getting caught in the mat at the 72nd Street store, or others like it.  (Lawrence Dep. at 34, 43, 45-46; Porch Dep. at 31-32, 72.)

Plaintiff's expert, Dr. William Marletta, is a safety consultant.  He conducted intensive research on the mat in issue and prepared a report.  Dr. Marletta based his report on (1) color photographs of the mat and the accident location, (2) a sample section of the actual mat that an investigator (hired by Plaintiff) removed from the vestibule area after the accident, and (3) Plaintiff's right shoe. (See Marletta Report at 1.)

In his report, Dr. Marletta concludes that "the mat was dangerous, hazardous, and provided a trap for users." (See id. at 7.) Further, "[t]he hazard is concealed as the openings are masked by the support projections, which are inherent in the circular

-6-

design .... [T]he rubber projectiles within the circular mat design, bend, fold, and collapse easily when the heel is inserted[.]" (See id.) According to Dr. Marletta, "the design creates a trap, hole, depression, defect, and is otherwise hazardous for women with small base heel shoes." (See id.) Nothing in Dr. Marletta's report refers to any wear and tear of the mat. Nor does the report opine as to the effect of hypothetical wear and tear on the stated design hazards. Rather, it concludes that it was the design-related features of the mat that "represented the proximate cause(s) of this accident." (See id. (emphasis added).)

In response to Defendant FedEx Kinko's motion for summary judgment, which asserts that Defendant did not create or have notice of any defective condition of the mat, Plaintiff claimed for the first time that the mat in issue was worn. To that end, Plaintiff submitted an affidavit by Dr. Marletta, who now states that such mats "may be compromised over time and use," but that he "was precluded from determining whether the area of the mat involved was in defective condition and as to how long that defective condition existed prior to the happening of the accident, if in fact a defective condition existed." (See Affidavit of Dr. William Marletta, dated July 17, 2009 ("Marletta Aff."), at 5-6. (emphasis added).) The actual mat is now unavailable for inspection because FedEx Kinko's discarded it in February 2008,

-7-

prior to the initiation of this litigation, as part of a routine remodeling of its store. (Lawrence Dep. at 22-23.)  For over five months following the accident, the mat remained in place at the FedEx Kinko's store. (See id.)  Ms. Schwarz's counsel made no request for the preservation of the mat. (FedEx Kinko's Reply and Opposition to Plaintiff's Cross-Motion, dated Aug. 13, 2009 ("FedEx Kinko's Reply and Opp."), at 1.)  Dr. Marletta never personally visited the scene of the accident to inspect it.[2]  (See Marletta Report.)  Dr. Marletta's affidavit does not indicate whether, even were the entire mat available, he would now be able to identify and distinguish putative pre-accident from post-accident wear and tear.

III. The Parties' Summary Judgment Motions

FedEx Kinko's moves for summary judgment against Plaintiff and Milliken under Rule 56 of the Federal Rules of Civil Procedure, arguing the following: (1) because FedEx Kinko's did not create or have notice of the alleged defective condition of the mat, it is not liable to Plaintiff under New York's law of negligence; (2) because FedEx Kinko's is not within the manufacturing or distributive chain, it is not liable to Plaintiff under New York product liability law; (3) because FedEx Kinko's was not negligent, it is not liable to co-defendant Milliken for contribution and

---

[2]     Dr. Marletta based his investigation on an appropriated sample of the actual mat and photographs of the actual mat taken by Plaintiff's investigator. (See Marletta Report at 1; Schwarz Dep. at 38-39, 60-61.)

indemnity; (4) because FedEx Kinko's is not within the manufacturing or distributive chain, it is not liable to Milliken under New York breach of warranty law; (5) because there was no contractual relationship relating to indemnity, FedEx Kinko's is not liable to co-defendant Milliken in contract. (See FedEx Kinko's Memorandum of Law in Support of its Motion for Summary Judgment, dated July 13, 2009 ("Def. Mem."), at 3.)

Plaintiff opposes FedEx Kinko's motion and cross-moves for partial summary judgment. Plaintiff argues: (1) because of FedEx Kinko's alleged spoliation of the mat, she is "deprived of her ability to prove her prima facie case." (See Plaintiff's Local Rule 56.1 Statement of Material Facts, dated July 27, 2009, ("Pl.'s 56.1 St.") ¶ 12.) As a sanction, Plaintiff requests that FedEx Kinko's Answer(s) be stricken and that all issues of liability be resolved in her favor; (2) because of the alleged spoliation, FedEx Kinko's should be precluded from asserting non-creation or lack of notice of defects relating to the mat. (See Plaintiff's Cross-Motion for Partial Summary Judgment, dated July 31, 2009 ("Plaintiff's Cross-Motion"), at 1-2.)

Milliken has submitted an Affirmation in Opposition to FedEx Kinko's Motion for Summary Judgment and in Partial Support of Plaintiff's Cross-Motion. Milliken adopts Plaintiff's position that the alleged spoliation should forestall FedEx Kinko's from asserting non-creation or lack of notice of the defect. (See

Milliken Affirmation ¶ 3.)

### DISCUSSION

The Court addresses the issues in the following order: first, the applicable legal standard governing motions for summary judgment; second, Plaintiff's spoliation claim; third, FedEx Kinko's substantive motion.

I.    Summary Judgment Standard

    A. Federal Rule 56

Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment may not be granted unless the Court determines that there is no genuine issue of material fact to be tried, and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552-53 (1986); Salahuddin v. Goord, 467 F.3d 263, 272-73 (2d Cir. 2006); Williams v. Utica College of Syracuse Univ., 453 F.3d 112, 116 (2d Cir. 2006).  The burden of demonstrating the absence of any genuine dispute as to material facts rests upon the party seeking summary judgment.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970).  Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party to make an adequate showing to establish the essential elements of that party's case on which it bears the burden of proof at trial.  See Hayut v. State Univ. of N.Y., 352 F.3d 733, 743 (2d

-10-

Cir. 2003).  In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, courts are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986); Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004).  Nevertheless, to defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  The non-moving party must put forth "specific facts showing there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The non-moving party may not rely on its pleadings, mere allegations, simple denials, conclusory statements, or conjecture to create a genuine issue for trial.  See Anderson, 477 U.S. at 256-7, 106 S. Ct. at 2514; Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007).

B. Local Rule 56.1

Under the Southern District of New York's Local Civil Rule 56.1, a party moving for summary judgment must submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Civil Rule of the Southern District of New York 56.1(a) ("Rule 56.1").  Significantly, "[e]ach

-11-

numbered paragraph in the statement of material facts set forth in
the statement . . . <u>will be deemed to be admitted</u> for purposes of
the motion unless [the opposing party specifically controverts each
item] by a correspondingly numbered paragraph in the statement . .
. ." Rule 56.1(c) (emphasis added). Both parties' statements must
be "followed by citation to evidence which would be admissible"
under Federal Rule of Civil Procedure 56(e). Rule 56.1(d).

 A non-moving party's failure to adhere to Local Rule 56.1(b)
can prove fatal because "[c]ourts in this circuit have not
hesitated to deem admitted the facts in a movant's Local Rule 56.1
Statement that have not been controverted by a Local Rule 56.1
statement from the non-moving party." <u>Gadsden v. Jones Lang
LaSalle Americas, Inc.</u>, 210 F. Supp. 2d 430, 438 (S.D.N.Y. 2002)
(collecting cases); <u>see also</u> <u>Millus v. D'Angelo</u>, 224 F.3d 137, 138
(2d Cir. 2000) (summary judgment "appropriate" in light of non-
moving party's failure to comply with Local Rule 56.1(b)); <u>see</u>
<u>Allen v. City of New York</u>, 480 F. Supp. 2d 689, 703 (S.D.N.Y.
2007)("If the opposing party fails to respond to the moving party's
Rule 56.1 Statement, then the material facts contained in the
moving party's statement are deemed admitted as a matter of law.")
(citing <u>Giannullo v. City of New York</u>, 322 F.3d 139, 140 (2d Cir.
2003)); <u>see</u> <u>American Med. Ass'n v. United HealthCare Corp.</u>, No. 00
Civ. 2800(LMM), 2007 WL 1771498, *2 (S.D.N.Y. June 18, 2007) ("When
parties decline to file Rule 56.1 statements, or when the

-12-

statements they file lack citations or are in some other way deficient, courts are 'free to disregard' the assertions therein") (citing <u>Holtz v. Rockefeller & Co., Inc.</u>, 258 F.3d 62, 73 (2d Cir. 2001)).

Nevertheless, Local Rule 56.1 "does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported by the record." <u>Holtz</u>, 258 F.3d at 74; <u>see also</u> <u>Giannullo,</u> 322 F.3d at 140 (holding that courts should independently review the record even if one party did not strictly adhere to the requirements of Local Rule 56.1). In reviewing the motion, the Court "may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." <u>Vermont Teddy Bear v. 1-800 Beargram Co.</u>, 373 F.3d 241, 244 (2d Cir. 2004); <u>see also</u> <u>Byrnie v. Town of Cromwell, Bd. of Educ.</u>, 243 F.3d 93, 101 (2d Cir. 2001) (noting that district courts should examine the record as a whole).[3]

---

[3]     Here, Plaintiff's and Milliken's submissions are deficient.  Upon receipt of FedEx Kinko's Rule 56.1 Statement and Notice, they failed to respond appropriately.  Plaintiff's short response, which Milliken affirms, (1) lacks corresponding paragraphs, and (2) fails to address the bulk of FedEx Kinko's assertions.  Further, ¶¶ 7 to 15 of Plaintiff's Rule 56.1 Statement contain only conclusory allegations of spoliation

II.  <u>Plaintiff's Spoliation Claim</u>

A. <u>Legal Standard Governing Spoliation of Evidence</u>

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." <u>West v. Goodyear Tire & Rubber Co.</u>, 167 F.3d 776, 779 (2d Cir. 1999) (citation omitted).  A party moving for spoliation sanctions must demonstrate the  following: (1) that its adversary had control of the evidence and a duty to preserve it at the time it was lost or destroyed; (2) that the adversary had a "culpable state of mind" when the evidence was lost or destroyed; and, (3) that the lost or destroyed evidence was "relevant" to the moving party's claims such that a reasonable trier of fact could find that it would support a claim.  <u>See</u>  <u>Residential Funding Corp. v. DeGeorge Financial Corp.</u>, 306 F.3d 99, 108, 107 (2d Cir. 2002); <u>see also</u> <u>Zubulake v. UBS Warburg LLC</u>, 220 F.R.D. 212, 220 (S.D.N.Y. 2003) (citing <u>Byrnie</u>, 243 F.3d at 107-12).[4]

_____

without citation to supporting evidence.  Thus, Plaintiff's and Milliken's responses to FedEx Kinko's motion are inadequate under Local Rule 56.1(b).
    Insofar as FedEx Kinko's supports its Rule 56.1 assertions with citation to competent evidence in the record, and such assertions have not been disputed or controverted with competent evidence, they are deemed admitted.

[4]     In urging the Court to impose spoliation sanctions, Plaintiff improperly invokes New York law.  (<u>See</u> Plaintiff's Cross-Motion for Partial Summary Judgment, dated July 31, 2009 ("Pl.'s Cross-Motion"), at 3-4.)  In a diversity case, federal law, not state law, governs the Court's imposition of spoliation

B. <u>Application</u>

1. <u>Duty to Preserve Evidence</u>

Because litigation was foreseeable and it was reasonably likely that Plaintiff might request production of the mat, Defendant FedEx Kinko's was under a duty to preserve the mat.

As a rule, a party is obligated to preserve evidence when it "has notice that the evidence is relevant to litigation . . . [or] should have known that the evidence may be relevant to future litigation." <u>Kronisch v. United States</u>, 150 F.3d 112, 126 (2d Cir. 1998) ("This obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation — most commonly when suit has already been filed, providing the party responsible for the destruction with express notice. . . .")(citations omitted); <u>accord</u> <u>Fujitsu Ltd. v. Fed. Express Corp.</u>, 247 F.3d 423, 436 (2d Cir. 2001); <u>Zubulake</u>, 220 F.R.D. at 216-17

---

sanctions. A federal court's authority to impose sanctions (for spoliated evidence and other misconduct) derives not from substantive law, but rather from its inherent power to control the judicial process. <u>See</u> <u>Residential Funding Corp.</u>, 306 F.3d at 106-107; <u>Hodge v. Walmart Stores, Inc.</u>, 360 F.3d 446, 449 (4th Cir. 2004)("The imposition of a sanction ... for spoliation of evidence is an inherent power of the federal courts.").

Further, as courts have observed, "a spoliation ruling is evidentiary in nature," <u>Adkins  v. Wolever</u>, 554 F.3d 650, 652 (6th Cir. 2009), and, "federal courts generally apply their own evidentiary rules in both federal question and diversity matters." <u>Farella v. City of New York</u>, 323 Fed. App'x 13, 15 (2d Cir. 2009) (citing <u>Adkins</u> F.3d at 652); <u>see also</u> <u>Cortes v. Peter Pan Bus Lines, Inc.</u>, 455 F. Supp.2d 100, 102 (D. Conn. 2006)(in a diversity action, federal law governs the imposition of spoliation sanctions).

(party was obligated to preserve evidence in employment discrimination case when litigation was reasonably anticipated; the duty requires a litigant to retain relevant evidence that is likely to be requested and/or is the subject of a pending discovery request); Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 72 (S.D.N.Y. 2001) ("[A litigant] is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request.").

In this case, Plaintiff's accident occurred on September 6, 2007. The state court litigation was filed on June 5, 2008. In the interim, Plaintiff sent a letter of representation to Defendant in November 2007. (See FedEx Kinko's Reply and Opp. at 1.) The letter was forwarded to FedEx Kinko's claims department. The parties did not submit the letter to the Court. The letter, as described, however, should have given FedEx Kinko's good reason to anticipate imminent litigation concerning Plaintiff's trip and fall at FedEx Kinko's store. Although the letter made no demands for the preservation of the mat, FedEx Kinko's reasonably should have known that the actual mat might at some stage be relevant to Plaintiff's impending claims, especially since Plaintiff's injury allegedly involved the mat. Hence, when, in February 2008, FedEx Kinko's discarded the mat, as part of a routine and scheduled

remodeling of the store, it breached its obligation to preserve
potentially relevant evidence.  Conceding this point to Plaintiff,
however, is not enough to warrant imposition of spoliation
sanctions.

### 2. Culpable State of Mind

Plaintiff fails to show that FedEx Kinko's acted with the
requisite culpability when it destroyed the mat.

Once a court has determined that a party was under an
obligation to preserve the evidence it destroyed, the court must
then consider whether that party acted with sufficient culpability
to warrant the imposition of sanctions.  See Fujitsu, 247 F.3d at
436; see also Kronisch, 150 F.3d at 127; Great Northern Ins. Co. v.
Power Cooling, Inc., No 06 Civ. 874 (ERK) (KAM), 2007 WL 2687666,
at *9 (E.D.N.Y. Sept. 10, 2007).  In analyzing this prong of the
spoliation test, courts in this Circuit have determined that a
"culpable state of mind" ranges from willful destruction in bad
faith to simple negligence.  See Residential Funding Corp., 306
F.3d at 108; Byrnie, 243 F.3d at 109 (internal citations omitted).

In the present case, there is no evidence in the record of
willful destruction in bad faith on the part of FedEx Kinko's.
FedEx Kinko's discarded the mat as part of a routine remodeling of
its store that occurred in the ordinary course of business.
(Lawrence Dep. at 22-23.)  Moreover, the mat was discarded prior to
the commencement of litigation.  This is, therefore, not a

situation in which a party discards evidence after having been advised by counsel of its preservation obligations. Cf. Chan v. Triple 8 Palace, Inc., No. 03CIV6048 (GEL)(JCF), 2005 WL 1925579, at *6 (S.D.N.Y. Aug. 11, 2005) ("The preservation obligation runs first to counsel, who has a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction[.]") (internal citation omitted). Further, Plaintiff makes no contention that FedEx Kinko's discarded the mat after Plaintiff made requests for its preservation. In fact, in the seven-month period between Plaintiff's accident to the date of FedEx Kinko's disposal of the mat, Plaintiff not once requested preservation of the mat.

At most, FedEx Kinko's disposal of the mat was negligent. However, FedEx Kinko's pre-litigation negligent disposal of the mat, as part of a routine store renovation, does not demonstrate the requisite culpability to impose a case-dispositive sanction. See Residential Funding Corp., 306 F.3d at 108 ("[Spoliation sanctions] may be appropriate in some cases involving the negligent destruction of evidence.") (emphasis added); see also Reilly v. Natwest Markets Group, 181 F.3d 253, 267 (2d Cir. 1999) (a "case-by-case approach" is appropriate in determining spoliation sanctions); cf. Rivera v. Nat'l Passenger R.R. Serv., 442 F. Supp.2d 164, 170 (S.D.N.Y. 2006)(denying plaintiff's motion for spoliation sanctions in the form of an adverse inference; finding

-18-

that, because defendant railroad company retained the metal cap
that allegedly injured plaintiff for at least six months after the
incident and threw it away long before plaintiff commenced legal
action, there was no duty to preserve it, and even if there were
such a duty, plaintiff had failed to show that defendant's disposal
was made with a culpable state of mind, whether negligent or
intentional).

### 3. Relevance of Missing Evidence

Given Plaintiff's representations and evidentiary posture
throughout this litigation, the Court finds the missing mat to be
insufficiently relevant to Plaintiff's claims against FedEx Kinko's
as to warrant the imposition of spoliation sanctions.

The third prong of the spoliation test requires the Court to
determine whether the despoiled evidence was "'relevant' to the
party's claim or defense such that a reasonable trier of fact would
find that it would support that claim or defense." Residential
Funding, 306 F.3d at 107; accord Zubulake, 220 F.R.D. at 221. The
Second Circuit has explained:

> [R]elevant in this context means something more than
> sufficiently probative to satisfy Rule 401 of the Federal
> Rules of Evidence. Rather, the party seeking an adverse
> inference must adduce sufficient evidence from which a
> reasonable trier of fact could infer that the destroyed
> [or unavailable] evidence would have been of the nature
> alleged by the party affected by its destruction.

Residential Funding, 306 F.3d at 108-09 (quoting Kronisch, 150 F.3d
at 127-28 and Byrnie, 243 F.3d at 110) (internal quotation marks

-19-

omitted).

Courts will find relevance as a matter of law when the unavailability of evidence stems from a party's egregious conduct. See, e.g., Scalera v. Electrograph Sys., Inc., No. CV 08-50(TCP)(AKT), 2009 WL 3126637, at *16 (E.D.N.Y Sept. 29, 2009). When evidence is destroyed in bad faith, for example, that alone is enough to support an inference that the missing evidence would have been favorable to the party seeking sanctions, and thus relevant. See Residential Funding, 306 F.3d at 109; see also M & T Mortgage Corp. v. Miller, No. 02 Civ. 5410 (NG)(MDG), 2007 WL 2403565, at *10-11 (E.D.N.Y. Aug. 17, 2007) (finding that the "missing documents [were] clearly critical to plaintiff's claims," and imposing sanctions for spoliation because "defendants acted in bad faith in destroying the documents." "[S]uch improper conduct alone is sufficient to support a finding that the documents were unfavorable to [defendant]."). By contrast, when the destruction of evidence is negligent, relevance must be proven through extrinsic evidence by the party seeking sanctions. De Espana v. American Bureau of Shipping, No. 03 Civ. 3573 (LTS)(RLE), 2007 WL 1686327, at *6 (S.D.N.Y. June 6, 2007). "This corroboration requirement is . . . necessary where the destruction was merely negligent, since in those cases it cannot be inferred from the conduct of the spoliator that the evidence would even have been harmful." Zubulake, 220 F.R.D. at 221 (quoting Turner, 142 F.R.D.

-20-

at 77).

Here, the Court cannot find relevance as a matter of law.  As discussed, there is no evidence in the record tending to demonstrate that the FedEx Kinko's conduct "rise[s] to the egregious level seen in cases where relevance is determined as a matter of law." <u>Toussie v. County of Suffolk</u>, No. CV 01-6716(JS)(ARL), 2007 WL 4565160, at *8 (E.D.N.Y. Dec. 21, 2007).

Further, even assuming that a lower level of culpability has been proven, Plaintiff fails to demonstrate that the discarded mat would have been favorable to her claim.  <u>See</u> <u>Great Northern Ins. Co. v. Power Cooling, Inc.</u>, No. 06 Civ. 874 (ERK)(KAM), 2007 WL 2687666, at *11 (E.D.N.Y. Sept. 10, 2007) ("[when] the culpable party was negligent, there must be extrinsic evidence to demonstrate that the destroyed evidence was relevant and would have been unfavorable to the destroying party") (internal citation omitted).

Indeed, Plaintiff's litigation conduct strongly suggests that the actual mat is not relevant to her claim.  Throughout the course of this action, Plaintiff's claim rested on allegations that the mat's design was inherently defective, and that FedEx Kinko's ownership and use of the allegedly defective mat on its premises was a failure of care.  The Complaint states "[Plaintiff] was caused to trip and fall due to defective conditions at the aforementioned "premises", [sic] and <u>more particularly the defective</u>

-21-

<u>matting</u> located at the "vestibule" area herein, causing the plaintiff to strike and came [sic] into violent contact with the glass door and especially the floor of said "vestibule", [sic] thereby causing her to sustain serious and permanent personal injuries." (Amended Compl. ¶ 15. (emphasis added).)

Plaintiff herself implied that her injury was caused by a design defect relating to the mat's holes.   In deposition, she asserted that her heel became "caught in the mat" (Schwarz Dep. at 29), and that the mat's defining features were circular openings containing prongs.   (<u>See</u> <u>id.</u> at 24-25.)   Likewise, Plaintiff's expert report advances and substantiates the theory that the mat's inherently defective design caused Plaintiff's accident.   (<u>See</u> Marletta Report at 7.)   Moreover, there is no evidence that Plaintiff ever requested the mat's production in the discovery phase of the litigation.   Instead, Plaintiff's investigator took photographs of the mat and even appropriated a small piece of the actual mat, which her expert later examined.   Plaintiff's claim hinged on her expert's finding that the mat's design-related defects were the "proximate cause(s) of this accident."   (<u>See</u> Marletta Report at 7.)

Not until FedEx Kinko's moved for summary judgment did Plaintiff even attempt to claim that the missing mat on which

Plaintiff fell was in some way "worn."[5] (Pl.'s Rule 56.1 St. ¶ 9.)
Plaintiff, however, adduces no evidence of wear and tear from which
a reasonable trier of fact could infer that the missing mat was
worn.   Her photographs of the mat at a time proximate to the
accident show no wear and tear.   There is no deposition testimony
by eyewitnesses that the mat was worn.   Moreover, even if the mat
was still in place, any current inspection of it would not be
probative of its condition over two years ago.   Finally, Plaintiff
adduces no evidence to suggest how hypothetical wear and tear could
combine with the defective design of the mat to cause Ms. Schwarz's
injury.   For these reasons, Plaintiff fails to meet the relevance
prong for spoliation.[6]

     In sum, FedEx Kinko's had a duty to preserve potentially
relevant evidence and arguably acted negligently in disposing of
the mat.   Plaintiff, however, has failed to show that the mat is
relevant to her claims, as they have been consistently advanced in
this litigation.   Further, in this case there is no evidence of
willful destruction of evidence in bad faith.   Spoliation sanctions
are, therefore, unwarranted.   Cf. Scalera, 2009 WL 3126637, at *17

---

[5]     Similarly, Plaintiff moved for spoliation sanctions
only after FedEx Kinko's moved for summary judgment.   Yet the mat
was discarded in February 2007.

[6]     While the mat is obviously relevant to Plaintiff's
product liability claim, Plaintiff has a sample of the mat and
there is no contention that other identical mats are unavailable
to demonstrate the claimed defects.

-23-

(denying plaintiff's motion for sanctions in the form of an adverse inference instruction because, although defendants breached a duty to preserve emails, plaintiff "failed to demonstrate that any destroyed emails would have been favorable to her position"); Houlihan v. Marriot International, Inc., No. 00 Civ. 7439 (RCC), 2003 WL 22271206, at *2 (S.D.N.Y. Sept. 30, 2003) (denying plaintiff's motion for spoliation sanctions in the form of an adverse inference, inter alia, because, although defendant hotel breached its duty to preserve a soap dish that fell allegedly injuring a plaintiff, defendant had no intent to destroy evidence to prevent its use in litigation, and plaintiff was only minimally prejudiced from lack of access to the soap dish, as he could rely on photographs and his own recollection); Port Auth. Police Asian Jade Soc. of New York and New Jersey Inc. v. Port Auth. of New York and New Jersey, 601 F. Supp 2d 566, 571 (S.D.N.Y. 2009) (denying plaintiffs' motion for spoliation sanctions in the form of an adverse inference because, although defendant was negligent in failing to preserve documents, plaintiffs could rely on other evidence to support their discrimination claim).[7]

---

[7]    Even were the Court to apply New York spoliation law, Plaintiff would face an even tougher task in demonstrating the necessity for sanctions.  See, e.g., Kirkland v. New York City Housing Auth., 236 A.D. 170, 173, 666 N.Y.S.2d 609, 611 (1st Dep't 1997) ("Under New York law, spoliation sanctions are appropriate where a litigant, intentionally or negligently, disposes of crucial items of evidence involved in an accident before the adversary has an opportunity to inspect them.") (internal citations omitted) (emphasis added).

-24-

C. The Fitting Remedy for Spoliation

Even if Plaintiff could support a claim for spoliation sanctions, the relief she now seeks is entirely unsuitable in this case.

Determining a fitting sanction for spoliation is left to the sound discretion of the trial judge, see West, 167 F.3d at 779-80, and is to be assessed on a case-by-case basis.  Fujitsu, 247 F.3d at 436; see also Reilly, 181 F.3d at 267 ("Trial judges should have the leeway to tailor sanctions to insure that spoliators do not benefit from their wrongdoing — a remedial purpose that is best adjusted according to the facts and evidentiary posture of each case."); Green v. McClendon, No. 08 Civ. 8496(JGK)(JCF), 2009 WL 2496275 at *2 (S.D.N.Y. Aug. 13, 2009) (the severity of the sanctions imposed should be congruent with the destroyer's degree of culpability) (internal citations omitted); cf. Holland v. W.M. Realty Mgmt., Inc., 64 A.D.3d 627, 629, 883 N.Y.S.2d 555, 557 (2d Dep't 2009)(under New York law, "[courts have] broad discretion in determining what, if any, sanction should be imposed for the spoliation of evidence").    Courts need be wary, however, of ordering case-dispositive sanctions, such as dismissal or the striking of a pleading, which "should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions."   West, 167 F.3d at 779 (internal quotation marks omitted)(quoting John B. Hull, Inc. v. Waterbury Petroleum

Prods., Inc., 845 F.2d 1172, 1176 (2d Cir. 1988); cf. Utica Mutual

Ins. Co. v. Berkoski Oil Co., 58 A.D.3d 717, 718, 872 N.Y.S.2d 166,

168 (2d Dep't 2009) (under New York law, "striking a pleading is a

drastic  sanction  to  impose  in  the  absence  of  willful  or

contumacious conduct").

     In  this  case,  Plaintiff  asks  that  the  Court  strike  FedEx

Kinko's Answer and proceed to a determination of damages.   (See

Pl.'s Rule 56.1 St. ¶ 15.)   Acceding to Plaintiff's requested

relief would be exorbitant.   Plaintiff has failed to show any bad

faith  on  the  part  of  Defendant.     Further,  Plaintiff's  claims

throughout the litigation, in essence, related to the latent design

dangers in the mat, not to wear and tear.  Conspicuously, Plaintiff

only put forth allegations that the mat could have been worn, and

claimed spoliation, after FedEx Kinko's moved for summary judgment.

Finally, Plaintiff is not prejudiced in pursuing her consistent

claim in this action - that the mat was inherently defective - by

the unavailability of the mat.   Plaintiff retains a sample and

photographs of the actual mat.  Cf. Holland, 64 A.D.3d at 629, 883

N.Y.S.2d at 557 (under New York law, "striking a pleading as a

sanction  for  spoliation  is  appropriate  only  where  the  missing

evidence deprives the moving party of the ability to establish his

or her claim or defense"); Enstrom v. Garden Place Hotel, 27 A.D.3d

1084, 1086-87, 811 N.Y.S.2d 263, 265 (4th Dep't 2006)(in a slip and

fall action against a defendant hotel for negligence and product

liability, the unavailability of the actual defective handle and affixing screws for testing did not warrant a directed verdict against defendant, on the issue of liability, as a sanction for spoliation; "plaintiffs are able to present a prima facie case based on defective design despite the spoliation of evidence"). For these reasons, Plaintiff's requested relief is inappropriate.

III. <u>FedEx Kinko's Motion for Summary Judgment</u>

    A. <u>Scope of Plaintiff's Claim</u>

FedEx Kinko's contends that there is no competent evidence in the record to allow reasonable jurors to conclude that Plaintiff's injuries were the result of FedEx Kinko's negligent maintenance of the mat.  The Court agrees.

In opposition to FedEx Kinko's Motion for Summary Judgment, all that Plaintiff has submitted is the Marletta Affidavit.  Dr. Marletta opines that "mats of this type ... may be compromised over time and use due to many reasons," but because "the mat was not made available for inspection [he] was precluded from examining or testing the area of the mat involved with the accident to form an opinion [about] whether the area of the mat involved was in a defective condition ...."  (<u>See</u> Marletta Aff. at 5-6.)  FedEx Kinko's protests that the Affidavit is a belated and impermissible shot at defeating summary judgment.  FedEx Kinko's first argument is that "[a] party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit

disputing his own prior sworn testimony." <u>Trans-Orient Marine Corp. v. Star Trading and Marine, Inc.</u>, 925 F.2d 566, 572 (2d Cir. 1991) (citing <u>Mack v. United States</u>, 814 F.2d 120, 124 (2d Cir. 1987); <u>Miller v. Int'l Tel. & Tel. Corp.</u>, 755 F.2d 20, 24 (2d Cir. 1985)).   Second, FedEx Kinko's argues that "an expert's opinions that are without factual basis and are based on speculation or conjecture are ... inappropriate for consideration on a motion for summary judgment .... An expert's conclusory opinions are similarly inappropriate." <u>Major League Baseball Properties, Inc., v. Salvino Inc.</u>, 542 F.3d 290, 311 (2d Cir. 2008) (internal citations omitted).

Defendant's first argument is persuasive.   Before FedEx Kinko's moved for summary judgment, Dr. Marletta's opinion was that Plaintiff's accident was caused by the inherently defective mat as it was manufactured.   Dr Marletta never claimed that, in the absence of the entire mat, he was unable to render a professional opinion as to the cause of this accident.   Now, however, Dr. Marletta speculates as to other possible causes.   Plaintiff cannot change her theory of causation after pretrial discovery has been completed.   If she chooses to disavow the opinions in Dr. Marletta's original report, she is left with no expert opinion as to the cause of her accident.

Further, the Court is in full agreement with FedEx Kinko's second argument.   Significantly, Dr. Marletta specifically admits

that he is unable to speak to whether the actual mat, of which he
had a sample, was worn.  Dr. Marletta never visited the site of the
accident and has no personal knowledge of the mat's condition in
September 2007.  Further, his affidavit gives no indication of how
putative wear and tear on this kind of mat might contribute to the
concealed hazards associated with the mat's defective design, which
Marletta first identified as the "proximate cause(s) of this
accident."  (See Marletta Report at 7.)  Rather, the affidavit
speculates on various possible causes for hypothetical damage to
such mats.  (See Marletta Aff. ¶ 8.)  An expert's speculations
about a hypothetical condition does not create a triable issue of
fact as to the existence of that condition.  See Raskin v. Wyatt
Co., 125 F.3d 55, 66 (2d Cir. 1997)("[A]n expert's report is not a
talisman against summary judgment.").

     Consequently, the Marletta Affidavit fails to create a triable
issue of fact about the existence of any worn condition of the mat
at the time of Plaintiff's accident.  Further, since Plaintiff
provides no other competent evidence to support her tardy and
threadbare assertion that the mat may have been worn or poorly
maintained, the Court concludes that no reasonable jury could find
that wear and tear of the mat was a cause of this accident.

     B. Plaintiff's Negligence Claim

     Plaintiff's negligence claim is that FedEx Kinko's ownership
and use of the an inherently defective mat on its premises was a

-29-

failure of care that caused her injury.  Because, however, FedEx Kinko's did not (1) create or (2) have notice of the alleged defective condition of the mat, it cannot be liable to Plaintiff under New York's negligence law.

Under New York law, "[t]o impose liability in a slip-and-fall action, there must be evidence that a dangerous or defective condition existed, and that the defendant either created the condition or had actual or constructive notice of it."  Rubin v. Cryder House, 39 A.D.3d 840, 840, 834 N.Y.S.2d 316, 317 (2d Dep't 2007).  Further, an injured plaintiff's allegation that a defendant property owner created the defective condition must be supported by evidence, not mere speculation.  See Carricato v. Jefferson Valley Mall Ltd. P'ship, 299 A.D.2d 444, 444, 749 N.Y.S.2d 575, 576 (2d Dep't 2002) (affirming a grant of summary judgment where a plaintiff's allegation that she slipped on a patch of black ice created by defendant was "speculative, unsupported by evidence"); Tsivitis v. Sivan Associates, LLC, 292 A.D.2d 594, 595, 741 N.Y.S.2d 545, 546 (2d Dep't 2002) (affirming a grant of summary judgment where no evidence was provided to support a plaintiff's contention that the defendant "caused the condition by negligent snow removal").

As set forth above, the burden is on FedEx Kinko's, as the movant, to demonstrate the absence of any genuine dispute as to material facts relating to creation or notice of the allegedly

dangerous condition.    A movant may meet this burden by demonstrating a lack of evidence to support the opposing party's claim. See Celotex Corp., 477 U.S. at 325, 106 S.Ct. at 2554.

    1. Creation of the Dangerous Condition

It is undisputed that Milliken and Plastics Engineering designed and manufactured the mat.  FedEx Kinko's played no part in its creation.  (See FedEx Kinko's Rule 56.1 St. ¶ 5.)    Further, there is no evidence that FedEx Kinko's caused the mat to enter into a dangerous condition by letting it become dangerously worn. Plaintiff's submissions, detailed above, fail as a matter of law to demonstrate that the mat was damaged or worn.  Thus, no reasonable jury could find that FedEx Kinko's created the alleged dangerous condition that purportedly caused Plaintiff's accident.

    2. Actual or Constructive Notice of the Dangerous Condition

Plaintiff also fails to offer any competent evidence to support the proposition that FedEx Kinko's had the requisite notice of the dangerous condition.

Here, there is no claim of actual notice.  Respecting constructive notice, for a plaintiff to assert successfully that a defendant had constructive notice of a dangerous condition, the "defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit [the defendant] to discover and remedy it."  Wesolek v. Jumping Cow Enter., 51 A.D.3d 1376, 857 N.Y.S.2d 859, 861 (4th Dep't 2008)

(citing Gordon v. American Museum of Natural History, 67 N.Y.2d 836, 837, 501 N.Y.S.2d 646 (1986)); Murphy v. 136 Northern Blvd. Assoc., 304 A.D.2d 540, 540, 757 N.Y.S.2d 582, 583 (2d Dep't 2003). Alternatively, "[a] plaintiff can establish constructive notice through evidence that the defendant was aware of an ongoing and recurring unsafe condition which regularly went unaddressed." Mazerbo v. Murphy, 52 A.D.3d 1064, 1066, 860 N.Y.S.2d 289, 291 (3d Dep't 2008) (citing Kivlan v. Dake Bros., 255 A.D.2d 782, 783, 680 N.Y.S.2d 293 (3d Dep't 1998)). Constructive notice cannot be established by a defendant's "general awareness that a dangerous condition may be present." See Piacquadio v. Recine Realty Corp., 84 N.Y.2d 967, 969, 622 N.Y.S.2d 493, 494 (1994); Voss v. D & C Parking, 299 A.D.2d 346, 347, 749 N.Y.S.2d 76 (2d Dep't 2002).

Plaintiff's submissions provide no evidence to indicate that the mat's alleged dangers were (1) visible and apparent, and (2) existed for a sufficient length of time before the accident for FedEx Kinko's to discover and remedy them. In fact, Plaintiff's expert report explicitly states that "the danger was clearly not open and obvious," and, "the hazard is concealed." (See Marletta Report at 7.) Similarly, Lisa Lawrence, FedEx Kinko's onsite manager, testified that she observed no defect (or wear and tear) in the mat. (See Lawrence Dep. at 42; Lawrence Aff. ¶ 3.) At her deposition, Plaintiff never testified that she observed visible dangers (such as wear and tear) when she entered the vestibule.

Likewise, Milliken's representative, Clarence Porch, observed no defect or wear and tear in post-accident photographs of the mat. (Porch Dep. at 73-74.)  Cf. Gordon, 67 N.Y.2d at 838, 501 N.Y.S.2d at 647 (finding defendant museum did not have constructive notice of paper on which plaintiff allegedly slipped and fell, absent any evidence that anyone observed paper before the accident or that paper was dirty or worn, indicating that it had been present for some time).

Furthermore, there is no evidence to suggest that FedEx Kinko's was aware of an ongoing and recurring unsafe condition. Prior to Ms. Schwarz's accident, neither FedEx Kinko's nor Milliken ever received complaints about the mat or any other indication of accidents caused by the mat.  (Lawrence Dep. at 34, 43, 45-46; Porch Dep. at 31-32, 72.)  Cf. Mazerbo, 52 A.D.3d at 1066, 860 N.Y.S.2d at 291 (constructive notice of unevenness of concrete flooring could be found based on proof of repeated prior complaints about the condition); Armstrong v. Ogden Allied Facility Mgmt. Corp., 281 A.D.2d 317, 318, 722 N.Y.S.2d 503, 504 (1st Dep't 2001) (finding potential constructive notice arising from the recurring protrusion of metal clips from the floor of the Javits Convention Center).  Thus, Plaintiff has failed to provide any evidence from which a reasonable jury could conclude that FedEx Kinko's had constructive notice of any dangerous condition of the mat.

-33-

In sum, because Plaintiff has offered no evidence from which a reasonable jury could conclude that FedEx Kinko's was negligent, FedEx Kinko's is entitled to summary judgment on Plaintiff's negligence claim.

C. <u>Plaintiff's Product Liability Claim</u>

FedEx Kinko's also moves for summary judgment on Plaintiff's product liability claim, arguing that since it is not within the manufacturing, selling, or distributive chain, it cannot be liable to Plaintiff under New York product liability law.

New York law is clear on who is liable in strict product liability cases.   "The courts have consistently limited applicability of strict products liability claims to those who, in some fashion, are within the manufacturing, selling or distributive chain of a particular product .... As we have previously recognized, [defendants] who have not manufactured, distributed or sold the product and whose only connection therewith is its purchase and subsequent incorporation into its business for use by members of the general public, do not fall within the above category."   <u>Serna v. New York State Urban Dev. Corp.</u>, 185 A.D.2d 562, 563, 586 N.Y.S.2d 413, 413 (3d Dep't 1992) (internal citations omitted); <u>see also</u> <u>Watford v. Jack LaLanne Long Island, Inc.</u>, 151 A.D.2d 742, 744, 542 N.Y.S.2d 765, 765 (2d Dep't 1989)(strict products liability may not be imposed upon a party that is outside the manufacturing, selling, or distributive chain).

-34-

In the instant case, FedEx Kinko's installed the mat in the vestibule for the benefit of its customers.  Mr. Porch's deposition testimony (see Porch Dep. at 6-7, 59), and Mr. Arca's affidavit (see Arca Aff. ¶ 3), establish that FedEx Kinko's was not the manufacturer, seller, or distributor of the mat.  Plaintiff fails to submit any evidence to show otherwise.  Plaintiff, therefore, fails to raise any triable issues of fact in this regard to withstand summary judgment.

D. Milliken's Cross-Claims

Milliken has cross-claimed against FedEx Kinko's, arguing that if it is found liable to Plaintiff, FedEx Kinko's is liable to Milliken for contribution and indemnification.  Because FedEx Kinko's was not negligent, however, it cannot be liable to Milliken under New York's law of contribution and indemnity.

For a defendant to be able to assert common law contribution and indemnification claims against a co-defendant, there must exist triable issues of fact relating to that co-defendant's underlying liability to the plaintiff, in this case for negligence.  Correia v. Professional Data Mgmt., Inc., 259 A.D.2d 60, 65, 693 N.Y.S.2d 596, 600 (1st Dep't 1999).  Here, the issue is moot.  The record evinces no genuine fact questions concerning FedEx Kinko's negligence.  Thus, Milliken's contribution and indemnity claims must be dismissed.

In regard to Milliken's breach of warranty and contractual

-35-

indemnity claims, these too must fail.   Under New York law, "liability may not be imposed for breach of warranty ... upon a party that is outside the manufacturing, selling or distributive chain."   <u>Watford</u>, 151 A.D.2d at 744, 542 N.Y.S.2d at 765.   It is uncontroverted that FedEx Kinko's is not within the manufacturing, selling, or distributive chain.   Indeed, Milliken provided the mat to FedEx Kinko's, and therefore, FedEx Kinko's cannot be liable to Milliken under New York breach of warranty law.   FedEx Kinko's claim must be dismissed.

Similarly, there is no evidence in the record of any contract that requires FedEx Kinko's to indemnify Milliken.   Therefore, FedEx Kinko's is entitled to summary judgment on Milliken's contractual indemnity claim.

**CONCLUSION**

For the reasons set forth above, Defendant FedEx Kinko's Motion for Summary Judgment is granted.   Plaintiff's Cross-Motion for Partial Summary Judgment is denied.   Therefore, Plaintiff's claims and Defendant Milliken's cross-claims against FedEx Kinko's are dismissed.   The only claims remaining in this action are those asserted by Plaintiff against Milliken for product liability, negligence, and breach of warranty.

Within 30 days of the date of this Opinion, Plaintiff and Milliken shall submit a Joint Pretrial Order and proposed jury instructions regarding the remaining claims.   Upon receipt of these

submissions, the Court will schedule a trial of this action.

This Opinion and Order resolves the motions docketed as entries 34 and 41.

SO ORDERED.

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: October 27, 2009
New York, New York

-37-